STATE ex rel. H. EVAN ROBERTS, Relator, v. STATE BOARD OF EQUALIZATION of the State of Montana, and W. J. WINTERS, E. J. BYRNE and JAMES A. LIGGETT, the Members of Said Board of Equalization of the State of Montana and Together Comprising the State Board of Equalization of the State of Montana, Ravalli County, Montana, ROY TILLMAN, the County Assessor of Ravalli County, Montana, and VIRGINIA PARKER, County Treasurer of Ravalli County, Montana, Respondents.

No. 10177.
Submitted September 7, 1960. Decided September 8, 1960.
355 P.2d 150.

Smith, Boone & Rimel, Missoula, for relator. Russell E. Smith argued orally.

George T. Bennett, Chief Tax Counsel, Board of Equalization, Helena, Gerald D. Schultz, County Atty., Hamilton, for respondents. George T. Bennett argued orally.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

In this cause, the relator, H. Evan Roberts, filed a petition to enjoin the respondents, the State Board of Equalization of the State of Montana, the members of said Board, Ravalli County, Montana, the County Assessor and the County Treasurer of Ravalli County, from assessing the net proceeds of the relator's mining operations for the year 1959 by combining the calculated net proceeds of said mining operations of 1958 with the net proceeds of said mining operations of 1959 and then dividing by two. This court determined that it was proper for it to take original jurisdiction in this cause, and issued an order to show cause directing the respondents to appear before the court on September 7, 1960, and show cause why they should not be permanently enjoined and restrained from assessing relator's net proceeds for the year 1959 in an amount of more than $298,426.70 or from collecting or attempting to collect any net proceeds taxes from relator based upon an assessment in excess of $298,426.70.

The facts of this case are not in issue. Briefly, they can be stated as follows:

By section 1 of Chapter 181, Montana Session Laws of 1959 (approved March 7, 1959), the State Legislature amended section 84-5408, R.C.M.1947, relating to the taxation of net proceeds of mining property. Insofar as important in the consideration of the instant case, the amended law reads:

"On or before the first day of July in each year the state board of equalization shall transmit to the county assessor of each county in which such mines and mining claims are situated, the valuation of the net proceeds of such mines and mining claims for the purpose of taxation, as the same have been determined and fixed by such state board of equalization. *The said valuation for the purpose of taxation shall be an amount equal to the average net proceeds from such mine for the five calendar years next preceding, or for as many years next preceding as the mine has produced gross yield, or for as many years next preceding as this act has been in effect, whichever is less. The*

*average net proceeds for valuation shall be computed by dividing the total net proceeds for such period by the number of years for which such net proceeds were taken into account.* In determining net proceeds of each individual year for averaging to determine valuation for purposes of taxation, *the actual annual net proceeds as defined in section 84-5403 of the Revised Codes of Montana, 1947, including losses, if any, from such mines and mining claims shall be taken for each year rather than the average valuation for such year.* \* \* \*'' (The new matter which was added by the amendment is italicized.)

This cause arises out of the above-quoted section, as amended. The relator operates a fluorspar mine in Ravalli County, and so operated in the calendar year 1958 that in 1959 there was assessed on the 1958 production net proceeds of $1,057,695.88. The tax on this assessment was paid. In the calendar year 1959 the net proceeds of realtor's operation, calculated by the State Board of Equalization under section 84-5403, as amended, was the sum of $298,426.70. Over the protest of the relator, the State Board of Equalization assessed the 1959 net proceeds at $678,061.30, and forwarded this assessment to the County Assessor of Ravalli County. This assessment was calculated by taking the net proceeds for 1958 of $1,057,695.88 and adding the net proceeds for 1959 of $298,426.70 and dividing the result by two in attempted compliance with section 84-5408, as amended.

The relator contends that the attempt to assess his net proceeds in the amount of $678,061.30 is invalid because section 84-5408, as amended, is unconstitutional in that it violates Article XII, §§ 1, 3, and 11, of the Montana Constitution.

Article XII, § 3, of the Montana Constitution provides:

''\* \* \* and the *annual net proceeds* of all mines and mining claims shall be taxed as provided by law.'' Emphasis supplied.

Relator argues that a tax on an *average of annual net proceeds,* as provided by the statute in question, is not a tax on

*"annual net proceeds"* and therefore not within the purview of this constitutional provision. We conclude that this argument has merit.

It can be demonstrated that taxes levied on the basis of averages will not produce the same amount of money as taxes levied on "annual net proceeds". Let us assume that the production of a mine results in actual annual net proceeds as follows, and determine what the average annual net proceeds will be under the same circumstances:

|  | Actual | Average |
|---|---|---|
| 1959 | $10,000 | $10,000 |
| 1960 | 5,000 | 7,500 |
| 1961 | 6,000 | 7,000 |
| 1962 | 7,000 | 7,000 |
| 1963 | 8,000 | 7,200 |
| Total Assessed Values | $36,000 | $38,700 |

Thus, over a five-year period the revenue produced on annual net proceeds is based upon an assessment of $36,000 while an average of the annual net proceeds for as many years produces revenue on the basis of an assessment of $38,700. The extent to which the law departs from annual net proceeds is even more graphically illustrated if we take the same total production for five years, but put the year of heavy production last. Thus, if the year of heavy production is in 1963, the picture is this:

|  | Actual | Average |
|---|---|---|
| 1959 | $ 5,000 | $ 5,000 |
| 1960 | 6,000 | 5,500 |
| 1961 | 7,000 | 6,000 |
| 1962 | 8,000 | 6,500 |
| 1963 | 10,000 | 7,200 |
| Total Assessed Values | $36,000 | $30,200 |

If we take into account losses, for which section 84-5408, as amended, provides, the law can be demonstrated to depart even more from a tax on "annual net proceeds" as follows:

|      | Net Proceeds | Actual | Average |
|------|--------------|--------|---------|
| 1959 | —$10,000     | ........... | ............ |
| 1960 | + 5,000      | 5,000  | ............ |
| 1961 | + 6,000      | 6,000  | 333.33  |
| 1962 | + 7,000      | 7,000  | 2,000.00 |
| 1963 | + 8,000      | 8,000  | 3,200.00 |
| Total Assessed Values | | $26,000 | $5,533.33 |

Since the law permits consideration of losses it can be seen that there could be a loss of revenue to the state and there will be an even greater departure from "annual net proceeds".

We conclude that this average of annual net proceeds, as provided by section 84-5408, as amended, is not the same as the "annual net proceeds" provided in Article XII, § 3, of the Montana Constitution and therefore that the law is unconstitutional.

Because of our conclusion, the other constitutional questions need not be considered.

Relator also contends that section 84-5408, as amended, was misconstrued by the respondents in that they took into consideration the annual net proceeds for the year 1958, in determining the amount of the relator's tax for the year 1959 and the statute was approved on March 7, 1959. Because of the disposition of this cause on the constitutional question involved, we find it unnecessary to consider this additional ground urged by the relator.

For the above-stated reason it is ordered that the respondents be permanently enjoined and restrained from assessing relator's net proceeds for the year 1959 in an amount of more than $298,-426.70 or from collecting or attempting to collect any net proceeds taxes from relator based upon an assessment in excess of $298,426.70 for that year.

MR. CHIEF JUSTICE HARRISON, MR. JUSTICE ANGSTMAN and THE HONORABLE VICTOR H. FALL, District Judge, sitting for MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE ADAIR specially concurring.

I entertain serious doubt as to the correctness of the procedure adopted in presenting to this court the question of the validity of Chapter 181, Montana Session Laws of 1959, at pages 381, 382, in an original proceeding here initiated seeking to restrain the collection of taxes alleged to have been irregularly assessed, levied or demanded. See R.C.M. 1947, §§ 84-4504 and 84-4505. However, in the instant case the respondent State Board of Equalization failed and omitted to argue the question of the correctness of the procedure employed, hence, I shall not pursue such issue further than to direct attention to the specific provisions of sections 84-4501, 84-4502 and 84-4503, R.C.M. 1947.

The Constitution of Montana, Article XII, § 3, specifically requires that "the *annual net proceeds* of all mines and mining claims shall be taxed as provided by law." Emphasis supplied.

The phrase "the *average* net proceeds from such mine" appearing both in the title and in section 1 of Chapter 181, Montana Session Laws of 1959, contemplates a far different tax than a tax on "the *annual* net proceeds of all mines and mining claims" provided for and permitted by section 3, of Article XII, of our Constitution.

An "*average* net proceeds" tax is not an "*annual* net proceeds" tax.

The Thirty-Sixth Legislative Assembly of the State of Montana (1959) was wholly without authority or power to substitute an "*average* net proceeds" tax for the "*annual* net proceeds" tax as was attempted in the enactment of Chapter 181, Laws of 1959.

The Constitution of Montana, Article III, § 29, declares:

"The provisions of this constitution are mandatory and pro-

hibitory, unless by express words they are declared to be otherwise.''

By virtue of the foregoing provisions of Montana's Constitution, the State Board of Equalization was without the necessary power and right to assess the net proceeds of any mines or mining claim pursuant to the wholly null and void provisions of Chapter 181, of the Montana Session Laws of 1959.